**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL BRODIE,** | : | |
| **Plaintiff** | : | |
| **v.** | : | **CIVIL ACTION NO. 3:15-0354** |
| **PA DEPT. OF CORRECTIONS,** | : | **(Judge Mannion)** |
| **et al.,** | | |
| **Defendants** | : | |

## MEMORANDUM

## I. Background

Michael Brodie, an inmate presently confined in the Fayette State Correctional Institution, La Belle, Pennsylvania, filed this *pro se* civil rights action pursuant to 42 U.S.C. §1983. The named Defendants are the Pennsylvania Department of Corrections and thirteen (13) employees at SCI-Smithfield, Plaintiff's former place of confinement. Presently before the Court is Defendants' motion to dismiss the Plaintiff's complaint for, *inter alia*, Plaintiff's failure to exhaust available administrative remedies. (Doc. 16). The motion has been fully briefed, and is ripe for disposition. For the reasons set forth below, the Court will grant Defendants' motion to dismiss.

## II. __Motion to Dismiss__

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6)

2

dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". Id. at 211 (quoted case omitted).

## III.  Facts alleged in Complaint

Plaintiff's allegations of fact are taken from Plaintiff's complaint and Plaintiff's attached exhibits. (See Doc. 1 at 3-29).

Plaintiff alleges that Defendants "willfully and knowingly used and/or misused the power of their offices to retaliate against Plaintiff for exercising his right to file informal and formal grievance complaints against them/defendants for refused or failure to compile (sic) with administrative policy to process Plaintiff for incentive based transfer to his home region, as well as violating his 5th, 14th, 1st and 8th amendments, along with DC-ADM 802." Id.

3

Additionally, Plaintiff claims that Defendants "used and misused administrative custody procedure and placement as a means of punishment and falsely fabricated reasons, then transferring him away from his region." Id. Specifically, Plaintiff claims that "after qualifying for an incentive based transfer, by complying with all DOC's prescriptive programs, including him maintaining positive behavior, staying misconduct free and keeping a positive work report, Plaintiff applied for his unit team, Defendants Steven Moist and Jerry Everhart for processing his transfer papers for his home region." Id.

On December 18, 2013, Plaintiff submitted an Inmate's Request to Staff Member with Defendant Biser, asking for assistance with processing his paper work for a transfer". Id. Defendant Biser forwarded Plaintiff's request to Unit Manager Everhart who responded, on January 6, 2014, with the following:

> You were reviewed previously for IBT and denied due to conduct issues. Mr. Moist has tried to speak with you but the last time you got up and left his office. This is not what we are looking for when it comes to IBT. Work with Mr. Moist and be cooperative.

Id. On January 14, 2014, Plaintiff submitted another Inmate's Request to Staff Member to Mr. Everhart, inquiring as to an incentive based transfer, and explaining that the reason he walked out of Mr. Moist's office was because he

had just told Plaintiff that his father died and "it had nothing to do with a IBT, so therefore he lied to you as well." Id.

On January 17, 2014, Mr. Everhart responded that "the bottom line is that no inmate has the right to incentive based transfer" and that "these are processed and approved at the discretion of staff"; although Plaintiff "can request consideration, but there is no requirement to proceed, you need to work with staff to determine if something like this would be possible." Id. Defendant Everhart suggested that Plaintiff "start by cooperating with [his] counselor." Id.

Also, on January 17, 2014, Plaintiff's Grievance No. 492487-14, filed on January 2, 2014, was denied as follows:

> Mr. Brodie, I have received, read and investigated your grievance concerning your father and what you believe your Unit Team did not handle. You state that you are being discriminated against because you are eligible for an Incentive Based Transfer and your Unit Team will not do the paperwork. You also state that you have asked Mr. Moist, your counselor, to look into your correspondence with your father that was housed at SCI-Laurel Highlands.
>
> Your Incentive Based Transfer vote sheet was routed and denied in December 2012. You are more than welcome to get with your Unit Team on initiating another vote sheet on an Incentive Based Transfer, please keeping in mind that there are [no] guarantees of a positive decision. As for your correspondence privileges with your father, you were approved in 2009 and from what I can tell were never revoked. So this is a non-issue.

5

Although I am sorry to hear about the loss of your father, I am certain that SCI-Laurel Highlands did not take into consideration your housing status. From my experience with inmate deaths with in a facility, we are required to notify the next of kin. The notifications that are made after that would fall into the hands of the person named as the next of kin. I would hope that you have contacted someone in the Chaplaincy department or Psychology department if you are having difficulty dealing with your father's death.

I find no policy and or procedure violations of your grievance, therefore it is denied.

Id. Plaintiff filed an appeal of the Grievance No. 49287-14 to the Facility Manager, who, on February 5, 2014, concurred with the grievance officer's response, stating that "the grievance officer has given you appropriate information and direction to take moving forward." Id.

No final appeal was filed to the Secretary's Office of Inmate Grievances and Appeals. Instead, Plaintiff wrote a letter to the DOC Office of Population Management ("OPM") stating that he was being discriminated by his unit management team. Id. By response dated February 27, 2014, the OPM Transportation Lieutenant responded with the following:

I am responding to your letter to the office of Population Management (OPM). In you correspondence you are stating that you are being discriminated against by your unit management team. Please discuss these problems with your facility administration or please use the inmate grievance system for further complaints.

6

Id.

On April 7, 2014, Plaintiff received an Administrative Custody Status memo stating the following:

> On 3/21/2014, "other" report was written to place you in administrative custody under investigation. An additional 15 days has been requested and granted for the Investigation. Your AC Investigative status has been extended through 04/19/2014.

Id. Plaintiff's administrative custody status was continued again on April 15, 2014 and April 29, 2014. Id.

On May 26, 2014, Plaintiff received Misconduct No. B027552 for Possession of Contraband. Id. On May 30, 2014, Plaintiff pled guilty to the misconduct and the contraband was revoked. Id.

On June 9, 2014, Plaintiff filed Grievance No. 513144-14, alleging that Defendant Harper made some sort of defamatory statement to his character regarding the misconduct. Id. On June 16, 2014, Grievance No. 513144-14 was rejected by Defendant Hollibaugh because a grievance must be legible, understandable and presented in a courteous manner. Id.

On June 26, 2014, Plaintiff filed Grievance No. 51575-14, challenging Misconduct No. B027552, which he received on May 26, 2014. Id. On Jun 27, 2014, Defendant Hollibaugh rejected the grievance, as grievances related to Inmate Discipline/Misconduct Procedures are to be grieved pursuant to DC-

ADM 801. Id.

In July 8, 2014 Plaintiff was transferred to SCI-Fayette. Id.

On February 19, 2015, Plaintiff filed the above captioned action seeking compensatory and punitive damages for violations of his First, Fifth, Eighth and Fourteenth Amendment rights, when he was denied an incentive based transfer to another prison and Defendants retaliated against him for filing grievances by placing him in administrative custody in the prison, issued him a fabricated misconduct and transferred him away from his region. Id.

## IV.  Discussion

Section 1997e(a) of title 42 U.S.C. provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit. Booth v. Churner,

532 U.S. 731, 739 (2001). Failure to exhaust available administrative remedies is an affirmative defense. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002). As such, the failure to exhaust available administrative remedies must be pleaded and proven by the Defendants. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

Defendants have properly raised the matter of exhaustion of administrative remedies made available to inmates confined within the Department of Corrections. The Pennsylvania Department of Corrections' administrative remedies for inmate grievances are provided for in Department of Corrections Administrative Directive 804.  See www.cor.state.pa.us, DOC Policies, DC-ADM 804, Inmate Grievance System Policy ("DC-ADM 804"). This policy establishes the Consolidated Inmate Grievance Review System, through which inmates can seek to resolve issues relating to their incarceration. Id. The first step in the inmate grievance process is initial review. Id. Grievances must be submitted for initial review within 15 working days after the event upon which the grievance is based. Id. After initial review, the inmate may appeal to the superintendent of their institution. Id. Upon completion of the initial review and the appeal from the initial review, an inmate may seek final review with the Chief of the Secretary's Office of Inmate

Grievances and Appeals (SOIGA). Id.

It is clear from Plaintiff's own exhibits attached to his complaint that Plaintiff has failed to exhaust his administrative remedies before filing the above captioned action, as it is clear the action was filed prior to Plaintiff seeking final review of his grievance. Although the Facility Manager timely responded on February 5, 2014, to Plaintiff's appeal of Grievance No. 492487-14 regarding Plaintiff's Incentive Based Transfer, Plaintiff took no further action to appeal his grievance to the Secretary's Office of Inmate Grievances and Appeals for final review. In fact, the only grievance Plaintiff appealed to final review between January, 2013 and his transfer on July 8, 2014, was Grievance No. 502320, regarding a cut he received on his right index finger because the edge under the table was not filed down. (See Doc. 17-1 at 6-7, Declaration of Keri Moore, Assistant Chief Grievance Officer in the Secretary's Office of Inmate Grievance and Appeals).

In response, Plaintiff attempts to argue that he has "showed good faith in every step to exhaust every issue for his IBT" and that "Defendants erred when his appeal was sent to the OPR office". (Doc. 20 at 16, brief in opposition). Courts have held that affirmative misconduct by prison officials, designed to impede or prevent an inmate's attempts to exhaust, may render

administrative remedies unavailable. See Todd v. Benning, 173 Fed. App'x 980, 982–83 (3d Cir. 2006) (expressing approval of Eighth Circuit's holding in Miller v. Norris, 247 F.3d 736 (8th Cir. 2001) that administrative remedies were not available where prison officials "purportedly prevented prisoner from employing the prison's grievance system"). An inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis v. Warman, 49 Fed. App'x 365, 368 (3d Cir. 2002). Case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis, 49 Fed. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse failure to exhaust are frequently rebuffed by the courts. For example, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 Fed. App'x 58, 59 (3d Cir. 2005). Plaintiff acknowledges this fact in his brief in opposition when he states that "if the court did not allow the

response of Theodore R. Cater, [to] act as the final exhaust for Plaintiff then Plaintiff has not properly exhaust this issue for his IBT." (Doc. 20 at 16).

In the instant action, Plaintiff failed to exhaust his administrative remedies with respect to the claims raised in the complaint. While Plaintiff attempts to place responsibility for his failure to exhaust at the hands of prison officials, his efforts in this regard are unavailing. Plaintiff simply has not shown that "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis, 49 Fed. App'x at 368. Plaintiff has pursued administrative remedies, but has abandoned his claims without completing the administrative review process. Such conduct plainly does not serve to excuse a failure to exhaust administrative remedies. See Banks v. Roberts, No. 1:06–CV–1232, 2007 WL 1574771, at *5 (M.D.Pa. 2007) (holding that while the plaintiff alleged that the defendants "obstructed" his efforts to pursue administrative remedies by refusing to provide proper forms and instructing others not to provide the necessary forms, the grievance process was available to him, and therefore, plaintiffs claim was procedurally defaulted for failure to comply with the process); Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000) (stating that there is no futility exception to the exhaustion requirement under any circumstances). It is clear that Plaintiff failed to

exhaust administrative remedies before initiating the instant action. In light of his failure to properly exhaust all claims, the complaint will be dismissed. See Woodford v. Ngo, 548 U.S. 81,92 (2006) (mandating complete exhaustion of all administrative remedies before filing suit); see also Rivera v. Pa. Dep't of Corr., 388 Fed. App'x 107, 108 (3d Cir. 2010) ("An inmate must exhaust his administrative remedies prior to filing a civil action in federal court").

## V.  Conclusion

For the reasons stated above, Defendants' motion to dismiss Plaintiff's amended complaint for Plaintiff's failure to exhaust administrative remedies prior to filing the above captioned action, will be **GRANTED**. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 28, 2016**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-0354-01.wpd

13